SABINA ROBBINS, Appellant, v. EMMA M. THORNTON, CLARA E. ROBBINS, and NETTIE C. HARBERT, Appellees.

**Life estates:** POWER OF SALE. A gift or grant of a life estate with an express denial of the power of sale, except upon the specified contingency that the income prove insufficient for the support of the life tenant and then only so much as may be necessary to meet such need, did not confer authority upon the life tenant to sell whenever in her judgment it was necessary, but only upon an application, hearing and order of court could sale be made that the rights of all parties interested in the property may be guarded.

*Appeal from Polk District Court.*—HON. W. H. MCHENRY, Judge.

SATURDAY, MARCH 14, 1914.

ACTION in equity to construe the will of J. F. Robbins, deceased, and to define and establish the rights of the plaintiff, his widow, under said will and under a certain antenuptial contract made between herself and the testator. From the finding of the district court, the plaintiff appeals.—*Affirmed.*

*Strock & Wallace,* for appellant.

*Brown & Bramner* and *Parsons & Mills,* for appellees.

WEAVER, J.—Jonathan F. Robbins died testate April 11, 1911. The plaintiff, as already mentioned, is his widow, and defendants are his children by a former marriage. Shortly before his marriage to plaintiff, and in contemplation thereof, they entered into a written agreement, of which the part material for our present consideration reads as follows:

I, J. F. Robbins, party of the first part, do hereby agree and bind myself, my heirs, executors and administrators, that after my death there shall be set apart to the said Sabina Huntley as my widow, one-fourth of all my estate, be it real or personal property of which I may die seised, to be by her held, owned and possessed during her natural life or so long as she may or does remain my widow. The same not to be by her sold or alienated, nor has she the power so to do except, that should the rents and profits growing out of the same prove or be insufficient for her support, and then and only then can she sell or dispose of the same, and then only as much thereof as will be sufficient to her support. The same to be by her accepted and received by her in lieu and in full payment and in entire and complete satisfaction of her right of dower and inheritance as my widow and heir, in full payment of, and in entire and complete satisfaction of her right to an allowance as my widow, under the provisions of section 3375 of the Code of Iowa.

And I, the said Sabina Huntley, party of the second part, and in contemplation of the marriage as aforesaid, with its rights and responsibilities, and in consideration of the gift to me by said J. F. Robbins, party of the first part, of one-fourth of all the estate, be it real or personal property of which he may be seised, to be by me held, owned and possessed during my natural life or so long as I may or do remain his widow, the same not to be by me sold or alienated, nor have I the power so to do, except; that should the rents and profits growing out of the same prove or be insufficient for my support, and then and only then have I the power to sell or dispose of the same and then only so much as will be sufficient to my support suitable to my condition during his lifetime. And I, the said Sabina Huntley do hereby agree and bind myself to receive and accept the said gift as aforesaid, in full payment and in entire and complete satisfaction

of all my rights of dower and inheritance as the widow and heir of the party of the first part in his estate, be it real or personal property, and in full payment and in full satisfaction of all my rights to an allowance as his widow out of his estate under section 3375 of the Code of Iowa. And I hereby renounce and relinquish all claim, right, title and interest in and to his said estate except as provided herein, by reason of the said relation as widow of the said J. F. Robbins party of the first part.

The material provisions of the will of Jonathan F. Robbins are as follows:

Par. 1. I hereby convey and transfer to Emma M. Thornton, Clara E. Robbins and Nettie C. Jennings as trustees in trust for the purposes and uses hereinafter referred to, mentioned and set forth, all of the property, real and personal and mixed of which I may die sensed and possessed, or to which I may at the time of my death be entitled.

Par. 3. I direct that one-fourth (¼) of my estate real and personal, of which I may die seised, be devoted and used by my said trustees in such a way as to comply with the provisions and terms of the antenuptial agreement entered into by myself and Sabina Huntley, now my wife, Sabina Robbins, on October 15, 1888, which agreement is recorded in the office of the county recorder of Polk county, Iowa, in volume 324 on page 597 and succeeding pages of the records of said office.

Par. 4. If not inconsistent with the provisions of said antenuptial agreement, I direct that my said trustees shall, as soon after my death as is consistent with the best interests of my estate, convert the personalty and unproductive realty of my estate into cash, and after payment of all just debts against my estate, loan the proceeds thereof and such other funds as may be on hand, taking to secure the repayment thereof mortgages on cultivated farm lands in the state of Iowa; and my said trustees shall rent the remaining real estate conveyed to them hereunder, for cash under such terms as the court may approve.

Par. 5. . . .

Par. 6. I direct that the sum remaining in the hands of the trustees realized from the loaning of said money and

renting of said real estate, be distributed each year, one-fourth (1/4) thereof to be paid to my wife, Sabina Robbins, so long as she remains my widow, one-fourth (1/4) thereof to be paid to my daughter, Emma M. Thornton, of Coldwater, Kansas, one-fourth (1/4) to be paid to my daughter Clara E. Robbins, of Des Moines, Iowa, and the remaining one-fourth (1/4) to be paid to my daughter Nettie C. Jennings, of Des Moines, Iowa.

Par. 7.   In the event that the portion of said revenue to be paid to my wife, Sabina Robbins, as hereinbefore provided, should in the judgment of the court prove insufficient for her support, I direct that sufficient of the principal of my estate, not in any event to exceed one-fourth (1/4) thereof, be disposed of to an amount sufficient to make up the deficiency.   That the same be used for her support.

Par. 8.   In the event any of the principal of my estate be disposed of or used for the benefit of said Sabina Robbins as hereinbefore provided, I direct that thereafter the portion to be paid to her out of the yearly revenues realized, as hereinbefore provided, be decreased in proportion to the amount of the said principal that may theretofore have been used for her benefit, to the end that the portion to be divided among my daughters may never be decreased thereby.

Par. 9.   .   .   .

Par. 10.   .   .   .

Par. 11.   I direct that any portion of my estate of which my said wife, Sabina Robbins, may have enjoyed the use under the provisions of this instrument, that may remain on her death or marriage, shall on the happening of either event, be divided equally between my said daughters; and in case of the death of either of my said daughters before said time, I direct that the share of such deceased daughter be divided equally among her surviving children.   If there be no surviving child or children of such deceased daughter, I direct that such share be divided equally among my surviving daughters, and if all be dead, among their heirs per stirpes; and I direct my said trustees, under the orders of the court, to make such conveyances thereof as may be proper to carry out my wishes herein expressed.

Par. 12.   In the event my said wife, Sabina Robbins, should die before my death, I direct that the portion of my estate of which she is herein granted the use and benefit be

divided, share and share alike; and in the event of the death of either of my said daughters before said time, I direct that the portion to which she would be entitled be divided equally among her surviving children, and in case she leaves no children, that such portion be divided equally among my surviving daughters.

Par. 13. I hereby declare my intent and purpose herein to be to make such provision for my wife, Sabina Robbins, as in said antenuptial agreement I agreed to make, and to give all of my property to my daughters subject to the provision herein made for my said wife. I further declare it to be my wish and intent that my said wife shall have and take no further or other interest in my estate than that herein expressly created.

Par. 14. I make the provision herein in behalf of my wife, Sabina Robbins, pursuant to the antenuptial agreement hereinbefore referred to, intending and desiring to comply fully with my obligations under such agreement, and to do so in a way that will best preserve my estate, and make the provision for my said wife of the greatest benefit to her, and without unduly lessening the value of my estate to my daughters. I make no further provision for my said wife for the reason that at the time of our marriage, we made a full and complete agreement as to the interests in my estate to which she should be entitled, and for the further reason that at the time of said marriage my said wife had a family of children by a prior husband, and I possessed a family of children by a prior wife, and that all of the property I now possess was acquired by me without help, aid or assistance from my said wife, Sabina Robbins.

The petition herein sets out the two instruments above mentioned and enumerates the property of which the testator died seised and possessed including therein a certain item of real estate in the city of Des Moines the record title to which is in the defendants but is alleged to have been taken by them in trust for the testator. It further alleges that the will in its provisions made for plaintiff is inconsistent with the terms of the antenuptial contract, and that she has never consented to accept the benefits thereof. She also alleges that one-fourth of the estate of the testator cannot be set

apart to her unless the real estate to be sold,. and that if one-fourth of said estate be set apart to her in real estate it would not prŏduce a sufficient income for her support. Upon the showing so made she prays a decree setting apart to her one-fourth of all the estate of the deceased to be owned, held, and possessed by her as provided in the antenuptial contract, and that she may have such order as is equitable for the sale and division of the property of said estate, and for other relief. The estate left by the testator consisted of two pieces of city property in the city of Des Moines (including the one held in the name of defendants), a. farm of 275 acres in Marion county, a farm of 320 acres in Union county, and personalty to the amount of $2,250.84. The agreed value of the estate, less a mortgage indebtedness of $3,000 on the Union county land, is $47,650.00.

The real point of plaintiff's contention is, and she asked the trial court to so hold, that under the terms of the antenuptial contract she is authorized and empowered to sell, mortgage, or dispose of the property set apart to her whenever in her own judgment it shall appear necessary so to do for her care and support, and that such power may be exercised by her without leave or order of court. The trial court refused to so hold, but did find that in so far as the will undertakes to place the property in trust, and thereby deprive plaintiff of the right to actual possession, use, and enjoyment of her one-fourth of the estate for life, it was of no force or effect. It further found that no actual partition of the several items of property was practicable, but that a certain described one hundred and sixty acres of the land and improvements thereon in Union county represented and constituted a full one-fourth in value of the estate of the deceased, and set the same apart to the use of the plaintiff for life, or until she shall again marry. The defendants were required to remove the lien of the mortgage on the land, and plaintiff's estate therein be held free from incumbrance, but that she should hold the same without authority to sell or dispose of the fee except in the

event that the use, rents, and income from said lands prove insufficient for her support, and then only to sell so much of the property as may be sufficient for that purpose. The denial of plaintiff's power to sell the one-fourth part of the property set apart to her use whenever in her judgment it is necessary to do so is the sole objection raised to the decree, and is the only disputed proposition urged upon our attention by appellant's counsel.

It is true that this and other courts have held in certain cases that a gift or devise of a life estate, with power in the life tenant to dispose of the fee for his support, makes the life tenant, acting in good faith, the sole judge of his necessities, and that he may sell and convey good title without asking or obtaining leave of the court. *Hamilton v. Hamilton*, 149 Iowa, 321, and cases there cited. It is upon these decisions and the rule therein approved the appellant relies for a reversal of the decrees below. We have no disposition to overrule cited precedents, or to retreat from any position there affirmed, but in none of these cases has this court, or any other, so far as we can ascertain, ever gone to the extent of the holding here asked at our hands. If anything is apparent from the antenuptial contract, it is that the parties thereto sought to provide against the assertion of the very claim now advanced by appellant. It assures to her the life tenancy of one-fourth of the estate should she outlive her husband, but "the same is not to be by her sold or alienated, nor has she the power so to do, except in case the rents and profits growing out of the same prove or be insufficient for her support, and then and only then can she sell or dispose of the same, and then only so much thereof as will be sufficient to her support." This is the stipulation on his part, and to emphasize it the appellant reiterates the same in identical words on her part. It was a natural and not improper anxiety on his part, while making suitable provision for the woman he was about to marry, to preserve the remainder of his estate intact for his children. As a man of mature years and ordinary judgment it is not too

much to assume that he recognized the possibility that the relations between the woman whom he was about to make his wife and his family of daughters might readily become unfriendly, if not actively hostile, and he sought by this contract, and thereafter by his will, to so adjust his estate as to do justice to both and at the same time furnish neither of them a weapon which could be used to the injury of the other. No case among those cited by the appellant presents any such features as are disclosed by this record. The gift of a life estate with unconditional power to sell for the life tenant's support is one thing. A gift or grant of a life estate with an express denial of power to sell, save only in a specified contingency, and then to sell only so much as may be necessary to meet that specific need, is a very different thing. In the former the tenant is vested with a wide discretion to devote the entire estate—the fee as well as the use—to the purposes of his support. In the latter no discretion is given and power to dispose of the fee is withheld until the happening of a condition precedent. *Minot v. Prescott,* 14 Mass. 496. Whether such condition exists at any time in a case like the one at bar is a question involving diverse interests. The arbitrary or unnecessary exercise of the power of sale may readily work very inequitable results. If, for instance, the plaintiff's needs for her support should exceed the income from her share of the estate, and she should claim that the time had come to supplement such income by a sale of enough of the land to relieve her wants, quite possibly it would be for the interests of the estate of the deceased, or of the heirs of the testator, to pay such reasonable sum as might be required, and thereby prevent a dismemberment or sacrifice of the farm. Such conflicts of interest ought not to be left to the arbitrary determination of a party to the controversy, and the title of the remaindermen, ought not to be eliminated except upon due adjudication by a court of competent jurisdiction. The validity of a sale made under such power without adjudication or order of court would be involved in so much uncertainty

and doubt as to seriously affect, if not destroy, the market value of the property, a hazard to which neither the plaintiff herself nor the defendants should be exposed. *Scheidt v. Crecelius,* 94 Mo. 322 (7 S. W. 412, 4 Am. St. Rep. 384).

We think it unnecessary to enter upon any extended review of the authorities. As already said those cited for the appellant have no marked likeness to this case at bar, either in essential facts or in the principles applicable thereto. Plaintiff's right to the income from one-fourth of the estate and, if it shall become necessary for her support, her right to subject the entire principal sum of such share are fully secured to her by the decree of the trial court. More than this she may not rightfully demand under her contract.

The record indicates that defendants also appealed from that part of the decree adverse to them, but their appeal is abandoned in argument, and presents nothing for our consideration.

For reasons stated the decree of the trial court is— *Affirmed.*

All the Justices concur.